GARVIN, RECEIVER *v*. CHADWICK REALTY CORPORATION.

[No. 26,836.  Filed June 23, 1937.  Rehearing denied
September 21, 1937.]

500

*Floyd W. Burns,* for appellant.

*Jones, Hammond, Buschmann & Gardner, William H. Kreig, Paul J. De Vault, Leo M. Rappaport, Harvey A. Grabill, Roland Obenchain* and *Ernest R. Baltzell,* for appellee.

HUGHES, J.—The appellee concedes that the nature of the action and issues as stated by appellant in his brief are correct and we will therefore adopt the same.

On May 4, 1933, the Circuit Court of Marion County, Indiana, in cause number 48067, wherein State of Indiana ex rel. Richard A. McKinley, Bank Commissioner, is plaintiff, and The Meyer-Kiser Bank is defendant, adjudged The Meyer-Kiser Bank insolvent and appointed appellant, Thomas E. Garvin, receiver of said bank to liquidate the assets and adjust the affairs thereof and said appellant is now the duly appointed, qualified, and acting receiver of said insolvent.

This is a proceeding, by way of intervention, brought by appellee, Chadwick Realty Corporation, in said receivership, to establish a preferred claim under Chapter 167, Acts 1931, against all the assets of said The Meyer-Kiser Bank in the hands of appellant as receiver thereof.

Appellee by its intervening petition and claim for priority alleged in substance that The Meyer-Kiser Bank was, until May 11, 1931, engaged in business as a

bank of discount and deposit; that on May 11, 1931, the board of directors of said bank authorized suspension of business and voluntary liquidation; that immediately thereafter the Indiana Commissioner of Banking investigated and found the assets of said bank to be in excess of its liabilities and the voluntary liquidation was thereafter duly and legally approved and continued until May 4, 1933, on which later date the Marion Circuit Court adjudged said bank to be insolvent and appointed appellant as receiver; that on the 2nd day of December, 1932, a certain underwriting agreement was entered into by and between Henry L. Dollman as first party and Meyer-Kiser Bank, predecessor of The Meyer-Kiser Bank a second party, which contract was duly approved and adopted by The Meyer-Kiser Bank upon its incorporation. That the payments hereinafter mentioned were made to said The Meyer-Kiser Bank under and pursuant to said contract, the pertinent provision of which contract reads as follows:

"Said corporation shall pay unto second party so long as any of said preferred stock shall remain outstanding, on the first day of each and every succeeding month, commencing on the 1st day of December, 1923, one-twelfth of the amount required to meet each succeeding year's obligations to the preferred stockholders, and such payments to be held on deposit by the second party and by it paid out for the sole purpose of meeting the obligations to the preferred stockholders of said corporation."

That pursuant to said underwriting agreement said Chadwick Realty Company issued and sold its common and preferred stock, and from and after the execution of said contract, payments of dividends to its preferred stockholders and retirements of preferred stock of said Chadwick Realty Company were made by it through said The Meyer-Kiser Bank as fiscal agent for said realty company under said contract: that pursuant to

said contract said Chadwick Realty Company from time to time prior to May 11, 1931, made deposits with said The Meyer-Kiser Bank for the special and sole purpose of meeting the dividend and maturity obligations to its preferred stockholders, the balance of which deposits on May 11, 1931, amounted to $2,500.00, of which amount the sum of $1,542.32 was deposited after the 11th day of March, 1931; of the $957.68 deposited prior to March 11, 1931, $800 was deposited by checks drawn by Chadwick Realty Company on its general checking account in The Meyer-Kiser Bank and $157.68 by checks drawn by Chadwick Realty Company on its general checking account in another bank located in Indianapolis, Indiana; of the $1,542.32 deposited subsequent to March 11, 1931, $1,342.32 was deposited by check drawn by Chadwick Realty Company on its general checking account in The Meyer-Kiser Bank and $200.00 by check drawn by Chadwick Realty Company on its general checking account in another bank located in Indianapolis, Indiana; that appellee, Chadwick Realty Corporation, is the successor and sole owner of all the assets and effects of Chadwick Realty Company including any claim against the Meyer-Kiser Bank; that the aforesaid deposits in the total sum of $2,500.00 were not invested by said bank and became at the time they were made and remained at all times thereafter commingled with the general assets of said bank; that said deposits have not been and cannot be traced into any specific asset owned by said bank at the time it went into voluntary liquidation or at the time the receiver was appointed; that none of the deposits that were made prior to March 11, 1931, in the aggregeate sum of $957.68 can be traced to any specific asset owned by said bank on March 11, 1931; that no part of the said balance of $2,500.00 has been paid to or used for the benefit of said claimant and that all thereof is now owing to said claim-

ant, appellee herein. That said funds so deposited were received by said bank in a fiduciary capacity to be held by it for the special and sole use and benefit of said Chadwick Realty Company or its assignee. The petition then prays that a trust and preference be declared against all of the assets of said bank in the hands of the receiver in favor of the intervening petitioner and said claimant in the sum of $2,500.00.

The appellant, Thomas E. Garvin, as receiver, answered said petition by way of confession and avoidance, the details of which answer are set forth under statement of the record. In said answer said receiver confessed the allegations of said petition but alleged by way of avoidance that notwithstanding the fact that the Commissioner of Banking of the State of Indiana found upon his investigation and examination the assets of said The Meyer-Kiser Bank to be in excess of its liabilities, that in truth and in fact the liabilities of said The Meyer-Kiser Bank exceeded its assets on March 11, 1931, and for some time immediately prior thereto and continuously ever since said date of March 11, 1931. Said answer further alleged that on March 11, 1931, The Meyer-Kiser Bank had general deposits and general credits totaling $1,741,345.98. The said answer prayed that Chapter 167 of the Acts of the General Assembly of the State of Indiana of 1931 be not applied to the claim for preference of Chadwick Realty Corporation and that said claim for preference be denied and said claim allowed only as a general claim and further that if said act be applied at all that it not be applied to that portion of the claim which represents deposits made and commingled with general assets prior to March 11, 1931, and further it was prayed that the portion of said claim which represents deposits made by drawing checks on claimant's general checking account with The Meyer-Kiser Bank be denied a preference.

The appellee filed a demurrer to the answer of the appellant which was sustained and judgment was rendered against the appellant in the sum of $2,500 as a preferred claim over all general creditors of The Meyer-Kiser Bank in all of its assets. Thus, in effect, holding that Chapter 167 of the Acts of 1931 applies to a claim for preference against a defunct bank whose liabilities exceeded its assets, prior to, on the date of, and continuously ever since the effective date of said act.

The error relied upon for reversal is that the court erred in sustaining the demurrer of appellee to the answer of the appellant.

Section 1 of said Act is as follows:

"That hereafter, upon the insolvency, suspension or liquidation of any bank of discount and deposit, or loan and trust and safe deposit company, while acting as executor, administrator, receiver, guardian, assignee, commissioner, agent, attorney-in-fact, or in any other fiduciary capacity, the person or persons beneficially entitled to receive the property and proceeds held in trust by it as aforesaid, or its successors in trust, shall have preference and priority over its general creditors in all assets of such bank or loan and trust and safe deposit company, for all uninvested funds so held in trust to the extent of any commingling with its general assets or which may not be duly accounted for."

The appellant presents two major propositions to sustain his assignment of error. The first proposition is:

Chapter 167 of the Acts of the General Assembly of the State of Indiana of 1931 does not apply to a claim for preference against a defunct bank of discount and deposit whose liabilities exceeded its assets, prior to, on the date of, and continuously ever since the effective date of said Act. We can not assent to this construction of the Act. The Act went into effect on March 11, 1931. The bank suspended business and went into voluntary liquidation on May 11, 1931, and the

Indiana, Commission of Banking found the assets of said bank to be in excess of its liabilities. It continued its voluntary liquidation until May 4, 1933, when the Marion Circuit Court adjudged said bank to be insolvent. The Act says:

> "That hereafter, upon the insolvency, suspension or liquidation of any bank of discount and deposit . . ."

This language is broad and inclusive and we have no doubt that the Act is applicable although the bank may have been insolvent at the time of the effective date of the Act. The voluntary liquidation of the bank and the adjudication of its insolvency both occurred after the passage of the Act. We can not construe the word "insolvency" as used in Section 1 of the Act to mean that period of time when the bank's liabilities exceed its assets. On the contrary it evidently means the time which is evidenced by some act of insolvency or a judicial determination of insolvency. We can not agree, as contended for by appellant, that it is only in the event of "insolvency" that the statute has any meaning and is applicable. This construction would do violence to the language of the Act and the evident intent of the legislature. The words "upon insolvency, suspension or liquidation" are plain and import a clear and definite meaning.

Words and phrases must be given their plain, ordinary, and usual meaning, unless a contrary purpose clearly appears, and in seeking the intent of an act effect must be given to every word and clause therein, if it is possible to do so. *Porter* v. *State ex rel. Hays* (1935), 208 Ind. 410, 196 N. E. 238. The Act clearly applies either when a bank has been adjudicated insolvent, when it suspends business, or when it is in the course of liquidation. The Act of 1931 was repealed by the Financial Institutions Act of 1933, p. 176, and §192

thereof takes the place of §1 of the Act of 1931. In said §192 it is provided, "upon the liquidation of any bank certain preferences and priorities are given fiduciaries." Although the only word used is "liquidation" it is evidently meant to include solvent as well as insolvent banks. Prior to March 11, 1931, the effective date of the Act, the bank was a going concern and if it was in fact insolvent at that time it would not come within the provisions of the Act until there was a suspension, liquidation, or adjudication of insolvency. The rights of creditors of a bank can only be determined when its assets are being liquidated. If at the time of liquidation the assets are found to be less than its liabilities then the relative rights of creditors are determined and fiduciaries given a preference or priority as to trust funds. In the case of *Hayden* v. *Chemical Natl. Bank* (1898), 84 Fed. 874, 876, it is said:

"Insolvency, in legal definition, does not mean that condition in which a business concern is placed when it finds that upon settlement and winding up of its affairs it will be unable to pay its debts in full; it means a present inability to pay current obligations as they mature. *Thompson* v. *Thompson*, 4 Cush. 127; *Vennard* v. *McConnell*, 11 Allen 555; *Wager* v. *Hall*, 16 Wall. 599. An act of insolvency takes place when a business concern or a bank has failed to pay some of its obligations, made an assignment for the benefit of creditors, suspended business, or done any of those things which indicate to creditors that a debtor has become insolvent."

In the instant case there is no contention or claim that the bank was not a going concern on March 11, 1931, and was not paying its obligations, nor that it had done anything which would indicate to its creditors that it was insolvent. For two months after March 11, 1931, the bank was a going concern and holding itself out, as far as the pleadings show, as a solvent institution and

soon after May 11, 1931, when it suspended business and went into voluntary liquidation, the Indiana Commissioner of Banking found the assets of said bank to be in excess of its liabilities and the voluntary liquidation approved and continued until May 4, 1933, when the bank was adjudged insolvent.

The language of §1 of the Act makes clear the intention of the legislature in enacting the statute. Preference is given beneficiaries over the general creditors of the bank and no distinction whatever is indicated between creditors having claims prior to March 11, 1931, and those claims which accrue thereafter. We find no provision for general creditors having claims existing prior to March 11, 1931, asserting them against any part of the assets in equality with trust claimant. A lien is given in favor of the trust claimants as against all the assets as against all the creditors. Trust funds never, in legal contemplation, become general assets of the bank although commingled. They are still the property of the trust and not of the bank or its creditors. But when commingled the act in question recognized the practical impossibility of identifying the trust property and made all the assets subject to a lien in favor of the trust property. General creditors, whose claims accrued before or after March 11, 1931, could not complain that they were not permitted to reach assets known to represent trust funds, consequently they are not injured by the Act in question which gives a general lien on all the assets of the bank. The lien given is merely a statutory substitute for the unidentified assets into which the trust assets have been merged. No reason is shown why a preference as against creditors should not be given to those holding claims prior to March 11, 1931, the same as claims arising after said date. The trust property does not belong to the bank and it could not be appropriated for the benefit of general creditors.

We do not think that a reasonable construction of the Act limits it to preferences over indebtedness thereafter created. We think the reasonable construction to place upon the word "hereafter" as used in §1 is to hold that the Act does not apply to insolvent institutions which were in the course of administration prior to the enactment of the statute, but it does apply to those financial institutions named in the Act which are declared insolvent or go into liquidation after the effective date of the Act.

The mere fact, if it be a fact, as alleged in the answer of appellant, that the liabilities of the bank exceeded its assets on March 11, 1931, and prior thereto is not sufficient to constitute a cause of defense to the intervening petition and claim of the claimant.

We do not consider that in construing the Act in question as applying to a bank whose liabilities exceeded its assets prior to, on the date of, and continuously since the effective date of the Act is in conflict with Chapter 8, §14 of the Acts of 1873, §18-2003 Burns 1933, §7967 Baldwin's 1934, as contended for by appellant.

The Act of 1873 prohibits the preference of one creditor over another after insolvency or in contemplation of insolvency. It does not, however, prohibit a trust fund from being preferred as against general claims.

The second proposition of the appellant is: Chapter 167 of the Acts of the General Assembly of the State of Indiana, 1931, can not constitutionally apply to a claim for preference for unidentified trust funds deposited and commingled prior to the effective date of said act in a bank of discount and deposit whose liabilities exceeded its assets prior to, on the date of, and continuously ever since the effective date of said Act

and where a portion of said deposits did not augment the assets of the bank.

It is first contended to so construe said Act would be in direct conflict with §3 of the Act itself. Section 3 is as follows:

> "This act shall not affect the obligation of any contract prior to its taking effect."

As to that part of the $2,500, to wit: $1,542.23 transferred to the bank after March 11, 1931, there can be no question that it does not come within the provision of the Act. Section 3 should be so construed as to be in harmony with all the other provisions of the Act.

We think the Act indicates a clear intention to cover all cases where the bank is acting as a fiduciary on the day the Act became effective and regardless of the time when the fiduciary relationship was created.

This question was passed upon in the case of *Union Trust Co.* v. *Ralston* (1936), 101 Ind. App. 548, 191 N. E. 94. The court said (p. 555):

> "A reading of said Act discloses that the prime purpose of its enactment was to safeguard uninvested funds held by banks and trust companies in a trust or fiduciary capacity, hence the statute must be construed so as to effect that purpose if that can be reasonably done. . . . A construction of said Act, which holds that upon the insolvency of a bank, while acting as a trustee after said Act went into effect, a valid claim for trust funds is preferred, even though said trust funds were commingled with the general assets of said bank before said Act went into effect, would not affect the pre-existing obligations of said bank to its general creditors. The bank's obligation to pre-existing creditors is to pay their checks and drafts *out of the general assets* of the bank, and if the bank becomes insolvent, they shall participate in the *general* assets."

In the case of *Nappanee Canning Co.* v. *Reid, Murdoch & Co.* (1903), 159 Ind. 614, 621-622, 64 N. E. 870, it is said:

"Until its property passes into the custody of the law by seizure under proceedings in attachment, or by the appointment of an assignee, trustee, or receiver, the corporation may sell, transfer, pledge, or mortgage its property in the same manner and subject to the same restrictions only as apply to the case of a private person. Such property is in no respect held in trust for the creditors of the association. The law of this State gives them no lien or claim upon such property. They have no right to look to the corporation or its directors to protect their interests. They deal with it at arm's length, and their attitude is antagonistic to the association. When asked to extend credit to it, all persons dealing with the corporation know that if it is, or thereafter becomes, insolvent, the whole of its property may be applied to pay or secure debts due to favored creditors, including officers and directors, and that the claims of all other creditors may be excluded and consequently lost. If, with this knowledge, credit is given, it cannot be said that preferences subsequently conferred upon other creditors have violated any right which the law gave to the creditor whose claim was left unpaid and unsecured."

It is not perfectly clear just what the legislature had in mind when it enacted §3 of the act. If its object had been to give preferences as against general creditors only who became such after the effective date of the act, March 11, 1931, it certainly did not use appropriate language. If that had been its purpose, then it could have stated: "This act shall not affect general creditors whose claims arose prior to its taking effect." If this had been the purpose of the act some such language would have been used to have definitely shown the intent and purpose. Moreover if such had been the purpose then such broad and inclusive language would not have been used in §1 of the act, wherein it is said, that hereafter, upon the insolvency, suspension or liquidation of any bank certain persons shall have preference and priority over general creditors. The language used in

this section is clear and unambiguous. There is no limitation in this section to creditors who come into existence after the passage of the act. It is broad enough to cover creditors before as well as after the effective date of the act. We think a proper construction of §3 would be to hold that where a bank has entered into a special contract with the beneficiary, the statute in giving such beneficiary a first lien on all the assets, shall not be construed as striking down or weakening any provision of the special contract between the beneficiary and the bank. The protection provided for in §3 is not for the benefit of general creditors' contracts, but in our judgment it is for the protection of the special terms, if any, of beneficiaries' contracts whose obligations are not to be affected.

Sections 1 and 3 must be construed together and when this is done, under the proper rules of construction, we are satisfied that we have given them their proper construction. In 59 Corpus Juris, p. 1003, it is said:

"Where one part of a statute is susceptible to two constructions, and the language of another part is clear and definite, and is consistent with one of such constructions, and opposed to the other, that construction must be adopted which will render all classes harmonious."

And in *State* v. *Shanks* (1912), 178 Ind. 330, 335, 90 N. E. 481, it is said:

"Statutes are to be construed so that full force and effect shall be given to all parts thereof, and this rule must be applied to ascertain wherein language which is specific, necessarily comes in conflict with other language which is general. The effort must, in the first instance, be to harmonize all the provisions of the statute by construing all parts together, and it is only when on such construction the repugnancy of special provisions to the general language is plainly manifest that the intent of the legislature, as declared in the general

enacting parts of the statute, is superseded. The intention of the legislature, as expressed in the language used, must govern in the construction of all statutes, and it is the duty of the court to construe legislative enactments according to the natural and most obvious import of the language and without resorting to refined distinctions or forced constructions for the purpose either of limiting or extending their operations, and with an eye to the evils they are intended to remedy. When there is no repugnancy between two distinct and co-ordinate sections of the same statute, the language of the special provisions of one should not be allowed to limit or control the general provisions of the other, especially when such general provisions are in harmony with the purpose and scope of the statute as expressed in the title."

The constitutionality of the act as to whether it affected or impaired the obligations of the bank to its general creditors which were executed before the law became effective was not passed upon by the court in the case of the *Union Trust Co.* v. *Ralston, supra*. It must be conceded that the general creditors did not have a right to share in any definite fund in the event of the liquidation of the bank. General creditors assume the relationship of creditor-debtor and rely upon the bank's general credit or assets as distinguished from trust funds. As said in the *Union Trust Co.* v. *Ralston, supra* (p. 556) :

"They understand that trust funds are not part of the general assets of the bank. They have no equitable or contractual right to participate in a distribution of any trust funds which have been commingled with general assets of the bank. . . . There is no reason why a distinction should be made between such pre-existing creditors and subsequent creditors. The same reasons for relieving the *cestui que* trust from said burden of tracing his fund, which reasons are admittedly sufficient in cases against subsequent creditors, are applicable in cases against pre-existing creditors."

It must be remembered that the act went into effect March 11, 1931, and the bank did not go into voluntary liquidation until May 11, 1931. The general depositors had two months within which to withdraw their accounts. In the case of *Witt* v. *People's State Bank of South Carolina* (1932), 166 S. C. 1, 16, 164 S. E. 306, the court said:

> " 'Moreover, as regards depositors, the only contract the bank has with a depositor is that it will pay his deposit upon demand, or his checks on presentation if the bank has sufficient funds on deposit to his credit. There is no other contract with the depositor. . . . The bank's relation to the depositor is simply that of debtor and creditor. The relation is not one of trust. The depositor has no lien against or special interest in any of the assets of the bank.' "

A different rule applies to a fiduciary and a bank and where a bank holds trust funds belonging to a fiduciary the funds become impressed with rights that the general depositors do not have. Prior to the enactment of the act in question trust funds which had been commingled with its general assets, as against general creditors of a bank could only be recovered if they could be traced. Under the present act the burden of tracing trust funds by the *cestui que* trust is taken away and the *cestui que* trust is relieved of this burden. This was the general purpose of the act. On the question of impairment of contracts, as contended for by the appellant herein, the court in the Witt case, *supra,* said (p. 16) :

> " 'Is it not very far-fetched to contend that a statute impairs the obligation of contracts as applied to depositors when all the depositor has to do is sign his name and withdraw his funds at any time? If he leaves his money on deposit after the passage of an act of the kind here in question, he necessarily leaves it there subject to the term of the act after a reasonable time to withdraw his deposit has been afforded him after the passage of the act. If he leaves it on deposit after the act is passed, the act

becomes a part of the law and contract governing his deposit to which he has necessarily assented by leaving his money on deposit. One who has so simple a remedy in his own hands of withdrawing his deposit can not claim that any contractual or vested right has been violated by such a statute when for a long period of time he left his money on deposit subject to the terms of the statute. If he leaves his money on deposit, he necessarily runs the risk of the bank becoming insolvent and all of the incidents attached by law to such insolvency.' "

The case of *Upton* v. *The New York & Erie Bank* (1878),13 Hun. (N. Y.) 269, is pertinent here. The question presented in that case was whether a law giving preference and priority to deposits by savings banks over all other general creditors of the depository banks was a valid enactment. The preference granted by the statute became effective before the bank failed, but after the claimant savings bank had made the deposit as to which priority was claimed, the same as in the instant case.

The same contention was made in that case as is here made by the appellant. It was claimed that the act as applied to the prior savings bank deposits violated the obligations of the contracts of the debtor bank to general depositors and creditors, who became such before the act became law, and deprived them of their property without due process of law. The court said (p. 272) :

"It is urged by the appellant's counsel that under the provisions of the act of 1875, the savings banks are not entitled to a preference for any deposits made prior to its passage. The act makes no such distinction. Preference is given for all sums deposited without regard to the time of making the deposit. It is urged, however, that in construing the statute it must be held to operate prospectively and not retrospectively, and hence all deposits made prior to its passage must be held not entitled to a preference under it. The act was intended to, and in terms does apply to all existing savings banks, and to all that should thereafter be created. It al-

ters existing charters; it brings all savings banks under one uniform system, and requires all to conform to the new conditions and provisions. There is not a particle of evidence in the act, that all or any of the provisions of it should not operate upon all existing banks and upon all their operations. It was within the power of the legislature to give the savings banks the preference; it violated no contract; it disturbed no vested right."

We think the case of *In re Inland Dredging Corporation, Ex Parte Globe Indemnity Co.* (1932), 61 Fed. (2d) 765, is especially applicable here. In this case the creditor was an insurer of the bankrupt under the Workmen's Compensation Act of New York and on December 2, 1930, recovered judgment against it for unpaid premiums. On April 20, 1931, §130 of that act was added to give priority to debts for premiums, whether simple or judgment, "in all insolvency or bankruptcy proceedings," subject only to claims for wages. On May 4, 1931, a petition in bankruptcy was filed and adjudication was had on May 21st. The question presented was whether the claim had a priority. The court said (p. 766) :

"Concretely, the question at bar is whether we should say that the amendment of section 130 would defeat assurances, in reliance upon which creditors had contracted. It is clear that the impairment clause (article 1, §10, Const. U. S.) does not control, though that too was dictated by the same underlying motive. The contracts between the bankrupt and its creditors were not disturbed; their sanctions remained what they were before. Therefore, those decisions which forbid an increase of the debtor's exemptions are not apt. *Edwards* v. *Kearzey*, 96 U. S. 595, 24 L. Ed. 793; *Bank of Minden* v. *Clement*, 256 U. S. 126, 41 S. Ct. 408, 65 L. Ed. 857; *In re Messinger*, 29 F. (2d) 158, 68 A. L. R. 1205 (C. C. A. 2). All that was done was to provide for a new division of any pot, which should in the future arise through the sequestration of the debtor's assets in bankruptcy, or any other insolvency proceedings. It is true that when a fund has been established *ab initio* for the benefit of a class

of creditors, changes in its allocation will be taken as prospective only. *United States F. & G. Co.* v. *Struthers Wells Co.*, 209 U. S. 306, 28 S. Ct. 537, 52 L. Ed. 804. . . .

"It is of course possible to imagine that, when a man deals with another on credit, he too relies upon an equal division of whatever may be left of his debtor's assets, if sequestered. But that is a somewhat extravagant hypothesis; men who do not get security in advance, for that very reason may ordinarily be taken to assume that the debtor will pay; they do not count upon his failure; or if they do, do not seriously depend upon the share they may get of the rump. Thus in Pennsylvania an amendment of the priorities against insolvent decedent's estates if passed before the testator's death, affects existing debts. *Ilgenfritz* v. *Ilgenfritz*, 5 Watts (Pa.) 158; *Deichman's Appeal*, 2 Whart. (Pa.) 395, 30 Am. Dec. 271. Even the impairment clause permits minor changes which, though they may somewhat prejudice the creditor's recourse against his debtor, leave him with substantial sanctions. This doctrine, beginning with *Bronson* v. *Kizie*, 1 How. 311, 11 L. Ed. 143, has been established in many decisions; e. g., *Oshkosh Water Works Co.* v. *Oshkosh*, 187 U. S. 437, 23 S. Ct. 234, 47 L. Ed. 249; *Conley* v. *Barton*, 260 U. S. 677, 43 S. Ct. 238, 67 L. Ed. 456. It has crystallized in the theorem that changes may be made in the remedy, so long as they do not affect the right. It is a general cannon of statutory interpretation, though in the end a matter of degree, as to which there can be no rules. The case at bar falls, in our opinion, upon the side of remedy; by which we mean no more than that the interests affected are too contingent, too remote and too insubstantial to demand protection."

In the case of *Deichman's Appeal* (1837), 2 Wharton (Pa.) 395, the court was considering a statute which gave a preference in the settlement of a decedent's estate and which deprived a judgment creditor of his former right to preference. It was said (p. 396) :

"It is contended by the appellant that the latter provision is unconstitutional so far as concerns him, because although the debtor died after the

law went into operation yet the appellant was a judgment creditor before its passage, and his claim would be diminished under the new law. It would seem, however, that it is the debtor's decease which asserts the right of the creditor to a dividend of the assets, and that the contract is governed by that point of time and not by the time of contracting the debt. The provision is a future one, operating prospectively, and not affecting an antecedent right. The rule of distribution is the remedy furnished by the law, on the occurrence of uncertain and subsequent events, namely, the death of the party without payment, and the incapacity of his estate to discharge his debts. . . . The only event that can be considered as vesting an specific right or interest in the creditor is the debtor's death. His insolvency is then ascertained; the consequences of the contract are consummated; the proportion has become a fixed and determined interest, and cannot be divested. Before that time it is but a future and contingent right."

In the instant case, under the terms of the act, the only event that can be considered as vesting any right or interest in the creditor is the insolvency, suspension, or liquidation of the bank. Before that time there is only a future and contingent right. In the instant case the bank was a going concern at the time the act was passed. No acts of insolvency, so far as we are advised, were committed and it was not adjudged insolvent for more than two years after the passage of the act. Moreover, it had been after the passage of the act, declared and adjudicated solvent by the Banking Commissioner of Indiana under the provisions of Chapter 161, p. 495, Acts 1929, that the assets of the bank exceeded its liabilities and approved its voluntary liquidation. We think the action of the Bank Commissioner, under the provisions of said act, is very similar to the Acts of Comptroller of the Currency of the United States Government. In the case of *Liberty Natl. Bank* v. *McIntosh* (1927), 16 Fed. (2d) 906, 909, it was said:

"The decisions of the Comptroller of the Cur-

rency are not subject to collateral attack, nor is his assessment against shareholders, and the amount thereof open to review; but, on the contrary, neither the bank nor the shareholders, clearly in the absence of fraud charged and proved, are entitled to a judicial determination of any question involved in his decision either as to the solvency, the sum due creditors and the amount of assessments as ordered, such matters one and all being exclusively within the judgment and discretion of the Comptroller, and as to which he acts in a quasi judicial capacity."

There is no merit in the contention that the title of the act is not broad enough to cover trust funds in a bank deposited and commingled prior to the effective date of the act. The title of the act is: "An act concerning funds held by a bank or trust company in a trust or fiduciary capacity."

It is not necessary that the title of an act should furnish a complete index to its contents; it will be sufficient to meet constitutional requirements if, upon a liberal construction, it is sufficient to apprise the legislators and the public of the subject-matter of the legislation. *Gmeiner* v. *State* (1925), 197 Ind. 43, 149 N. E. 728.

An act is not invalid because it includes details not mentioned in the title, provided the details are germane to the general subject designated in the title. *Benson* v. *Christian* (1891), 129 Ind. 535, 29 N. E. 26.

We do not think that any constitutional provisions of either the state or United States Constitution is violated by construing the act to apply to a claim for preference for trust funds deposited and commingled prior to the effective date of said act, although the bank may have been insolvent at said time.

Judgment affirmed.