REVIEW BOARD OF UNEMPLOYMENT COMPENSATION DIVISION OF DEPARTMENT OF TREASURY ET AL. *v.* MAMMOTH LIFE & ACCIDENT INSURANCE COMPANY.

[No. 16,759.  Filed June 16, 1942.]

*George N. Beamer*, Attorney General, *Joseph P. Mc-Namara, John M. Harrigan, Fred R. Bechdolt, Thomas M. Quinn, Jr.*, and *Charles W. Grubb*, Deputy Attorneys General, for appellants.

*Fesler, Elam, Young & Fauvre* and *Howard S. Young, Jr.*, all of Indianapolis, for appellee.

CURTIS, J.—This action was instituted before the Appeal Tribunal of the Unemployment Compensation Division by Choice McKinney, one of the appellants, against the appellee for benefits under the unemploy-

ment compensation law. The case was transferred to the Review Board of the Unemployment Compensation Division on its own motion. The said review board held that McKinney was an employee of the appellee within the meaning of the unemployment compensation law and was entitled to benefits. The appellee, pursuant to a statute in existence at that time, appealed to the Marion Superior Court, Room 3, for a judicial review of the review board's decision. The said complaint in that court alleged as error generally that: (1) The review board erred in finding as a matter of law that McKinney was an employee; (2) that the review board erred in not finding as a matter of law that McKinney was an independent contractor; and (3) the review board erred in deciding as a matter of law that an insurance agent and debit collector is subject to the unemployment compensation law. To this complaint the review board filed its answer in general denial, and also certified and filed in said court a transcript of all of the evidence and proceedings had before it as required by law.

Upon a trial of the cause, the trial court reversed the decision of the review board and held that there was no evidence to support the review board's decision. We now quote the finding and judgment of the trial court, as follows:

"Come now the parties, by their respective attorneys, and the defendants having filed their general denial in the plaintiff's complaint, and the defendants, Everett L. Gardner, Fred R. Bechdolt, and George Brubaker, as members of the Review Board of the Unemployment Compensation Division of the Department of Treasury, State of Indiana, having certified and filed with this court all documents and papers and transcript of all the testimony taken in the matter of the application of Choice McKinney to the State Unemployment Compensation Board for unemployment benefits under the Indiana Un-

employment Compensation Act, together with the findings of fact and decision of said Review Board, this cause is now submitted to the court for trial and determination upon the certified documents, papers and transcript of testimony taken in the matter before said Review Board, together with said Review Board's finding of facts and decision thereon, and the court having examined the same and the briefs of counsel and the court being duly advised in the premises, now finds for the plaintiff and finds that as a matter of law there was no evidence to support the decision of the said Review Board.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY the court that the decision of the Review Board of the Unemployment Compensation Division of the Department of Treasury of the State of Indiana is erroneous as a matter of law and the Review Board of the Unemployment Compensation Division of the Department of Treasury of the State of Indiana by and through its members, Everett L. Gardner, Fred R. Bechdolt and George L. Brubaker are hereby ordered to enter an order in accordance with this decree.

"IT IS FURTHER ORDERED AND DECREED that the plaintiff recover of the defendant, Choice McKinney, the costs of this cause."

A motion for new trial was duly filed by the appellants and overruled with an exception. The causes or grounds of the motion are that the decision of the court is contrary to law and not sustained by sufficient evidence. From the judgment above indicated, this appeal has been prosecuted, the sole error assigned being alleged error in the ruling on the motion for new trial. We now quote the statement of fact made by the said review board as follows:

"The employer is engaged in the Life and Accident Insurance business and the applicant performed services for such company from 1929 to May 30, 1939, as a salesman and debit collector. During the period from 1929 to May 16, 1939, the

applicant did not operate under a written agreement. However, on May 16, 1939, a written agreement, introduced in evidence as employer's exhibit 'B', was presented to the applicant by his district manager for his signature. The agreement was not in duplicate and was signed only by the applicant. The written agreement was retained by the district manager and filed with the employer company. The agreement provided in the last clause that:

" 'The effective date of this agreement as hereinbefore referred to shall be the second day of January, 1939.' The employer further introduced in evidence as employer's exhibit 'D' a letter of the Deputy Commissioner of the United States Internal Revenue Department in which it was held that services performed under a contract similar to employer's exhibit 'B' were not services in employment under the Social Security Act."

"The applicant testified that there had been no particular change in the manner in which he performed services at any time during the ten-year period in which he was performing services for his employer. He further testified that at the time he was required to sign the agreement designated as employer's exhibit 'B' he protested to the district manager and was assured by the district manager that nothing in it would hurt him.

"Services performed by the applicant were principally those of debit collector for which he was paid on a commission basis. If a policy lapsed he was required to obtain a new policy or sustain a loss on his debit. The applicant was given a fixed territory in which to operate and was furnished forms on which to make his report and was required to report at regular intervals. His debit book remained the property of the company and the sales commissions were interlocked with collections. The applicant could quit at any time he saw fit without either of the parties incurring any legal responsibilities to the other. When the applicant's services were terminated he had no further right to commissions and the business on his books became the absolute business of the company."

The working agreement between the appellant McKinney and the appellee was in writing and required the said appellant McKinney to work in a territory fixed by the appellee. As a further basis for its decision, the said review board made certain findings from which we quote as follows:

"Item No. 2 of the contract provides:

'The agent agrees that in carrying on his business, as contemplated in this agreement, he will be governed by the ethics of the Life Insurance profession and the laws and regulations of the Insurance Department of this State, and will so conduct himself as to not affect adversely the business, good standing or reputation of himself or the company.'

"The last clause of this section of the contract indicates that the employer has reserved the right to direct the agent as to his conduct at all times so as to protect not only the company's reputation, but that of the agent. This could be of a far reaching effect since the company might determine the quality of the customers and the appropriate time during which the agent should call on his customers.

"Item No. 3 of the contract specifically refers to the fact that the agent is *employed* by the Home Office of the Company, which indicates to this Board that the company recognized him as an employee rather than as an independent agent or contractor.

"Item No. 8 provides that the agent shall keep in a manner and form prescribed by the company, true and correct records of all transactions under this agreement and all such records shall at all times be subject to inspection by the duly accredited representatives of the company, and shall promptly be surrendered to the company upon the termination of this agreement.

"Item No. 16 goes further and provides that in case of the termination of his services for any cause the agent will promptly turn over to the company all monies, books, and other records belonging to the company, and will introduce his successor to his policy holders on the debit collected by him. and

will compensate the company for any loss or expense caused by his failure to do so.

"Items 8 and 16 indicate that the company could direct the agent to keep such records as it sees fit, which records continue to be the property of the company after the termination of his services and as an agent he acquired no rights in the business or to his customers. It would seem that one who is engaged in an independent trade or profession should not be required to give up his records, clientele, and good will at the termination of his contract.

"Item No. 20 provides:

'It is agreed that this appointment and this agreement, as well as the emoluments thereunder may be revoked, terminated, changed or modified from time to time by the company in its discretion, and at its pleasure with or without cause, without notice and without any liability thereof on the part of the company to the agent.'

"It therefore follows that although the commissions to be paid for services rendered are fixed in the contract, the company has reserved the right of changing them without notice and without liability and the right to change the compensation of an individual performing services, or the reservation of such a right together with the right to terminate the contract at will, which means the right to discharge at will, is a reservation of such a scope as to destroy the value of the contract to the agent.

"In the final clause of the written agreement we note that the effective date of the agreement shall be January 2, 1939, while in fact it was not signed until May 16, 1939. This is an attempt to change the status of an individual as to the performance of services which were already performed and in our opinion it is not sufficient to affect the period from January 2, 1939, to May 16, 1939.

*   *   *

"After careful consideration of the evidence presented, and having fully considered the briefs submitted by counsel for each of the parties, we are of the opinion that the applicant was not an inde-

pendent contractor but was an employee of this company."

We now quote the decision of the said review board, as follows:

"It is held that the applicant, throughout this period of services with this employer, was an employee and the amounts paid to him as commissions constituted wages upon which contributions are required.

"Dated this 21st day of November, 1939."

We have examined the condensed recital of the evidence and find that it substantially supports the finding of the review board. The facts found sustain the decision of the review board.

The statute in existence at the time the appeal was taken to the Marion Superior Court, but which statute has since been repealed, is as follows:

". . . In any judicial proceeding under this section, the findings of the review board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law. . . ."

In our opinion, this statute limited and circumscribed the jurisdiction of the trial court in said proceedings.

It should be pointed out that there is no charge whatever of fraud in the instant case. In the case of *Coppes Bros. & Zook* v. *Pontius* (1921), 76 Ind. App. 298, 301, 131 N. E. 845, it is said:

"Whether a person is an employe or an independent contractor is an ultimate fact to be determined from the evidence. It may be called a conclusion of fact, since it is a conclusion to be drawn from the contract itself, the attitude of the parties toward each other, the nature of the work, and all relevant circumstances. . . ."

In the case of *Bimel Spoke, etc., Co.* v. *Loper* (1917), 65 Ind. App. 479, 487, 117 N. E. 527, this court said:

"Ultimate facts need not be proved by any particular kind or class of evidence. If there are facts and circumstances proven in the case from which the essential ultimate facts may reasonably be inferred, and the court or board whose duty it is to pass upon such facts has drawn therefrom the essential ultimate facts, this court will not disturb such finding, though other and different facts might be inferred therefrom by other minds equally as fair and reasonable."

These two decisions have been followed and amplified by this court. On the basis of said decisions, and the later decisions, the trial court in the instant case went beyond its power and authority under the statute in setting aside the finding of the review board. It occurs to us that the trial court substituted its judgment for that of the review board in a matter where reasonable minds might differ. We think the action of the trial court is neither within the letter nor the spirit of the law. The unemployment compensation law should be liberally construed to the end that its beneficent provisions and purposes may be carried out. We now quote from the case of *In re Zeits* (1941), 108 Ind. App. 617, 632, 31 N. E. (2d) 209, as follows:

"The declaration of public policy of the Act (§ 52-1501, Burns' 1933 (Supp.)) clearly indicates that the Act is purposed as a relief to unemployment for those who for a time enjoy a service relationship followed by a period of unemployment. Therefore, any contract for the performance of service will be scrutinized beyond the mere form for the purpose of determining whether the relationship of the parties involved falls within the provisions of the Act."

The Legislature has defined "employment," as it is used in the Unemployment Compensation Act, as follows:

"(5) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the board that:

"(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(B) Such individual . . . is an agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort." § 52-1502 (h), Burns' 1933 (Supp.).

"(p) 'Remuneration' means all compensation payable for personal services including commissions and bonuses. . . ." § 52-1502 (p), Burns' 1933 (Supp.).

It may be further noted that the evidence in the instant case shows that McKinney received as his remuneration both commissions and bonuses, a fact that seems to have been overlooked by the appellee.

The appellee relied upon the case of *Warren* v. *Indiana Telephone Company* (1940), 217 Ind. 93, 26 N. E. (2d) 399, but as we read that decision, it does not change the basic principles heretofore stated in this opinion.

The trial court having exceeded its power in the instant case it follows that its decision is contrary to law.

The judgment is reversed with instructions that further proceedings be in accordance with this opinion.

NOTE.—Reported in 42 N. E. (2d) 379.