432 N.E.2d 459 (1982)
Dorothy A. FROST, Appellant (Claimant below),
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION AND YOUNGSTOWN SHEET AND TUBE COMPANY, Appellees (Respondents below).
No. 2-880A280.
Court of Appeals of Indiana, Second District.
March 22, 1982.
Albert C. Hand, Hand, Muenich & Wilk, Hammond, for appellant.
Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee Review Board of the Indiana Employment Security Div.
SULLIVAN, Judge.
This appeal is solely from that portion of a Review Board decision which determined that Dorothy A. Frost was overpaid $1,554.00 in unemployment insurance benefits.[1]
The Review Board's determination was premised upon the following facts: Frost *460 was discharged by her employer, Youngstown Sheet & Tube Co. on October 16, 1978. She received unemployment benefits of $74 per week for weeks ending November 18, 1978 through May 19, 1979 totalling $1,628.00.[2] Pursuant to Frost's grievance complaint and a resulting arbitration award, however, the discharge was set aside and she was reinstated on May 2, 1979 receiving $7,959 in retroactive wages for the period November 16, 1978 through May 1, 1979.

I.
The issue before us is whether the amount paid to Frost by Youngstown pursuant to the arbitration award constituted "deductible income" under I.C. 22-4-5-1 (Burns Code Ed. 1974).[3] If so, the State is permitted, pursuant to I.C. XX-X-XX-X, to recoup the unemployment benefits paid. We affirm.
The Review Board determined that the retroactive wages paid pursuant to an order of the grievance arbitrator were the legal equivalent of an award of back pay by the National Labor Relations Board (NLRB). Accordingly, the Board found such retroactive wages to be "deductible income." Frost argues that the award of the arbitrator here is an award of damages for the wrongful discharge, not an order to pay back wages, and that therefore the collateral source rule entitles her to retain both the arbitrator's award and the unemployment benefits. She further argues that deductible income in the context before us includes only back pay awarded by or made pursuant to an agreement with the NLRB.

A.
The clear language of the arbitrator's award belies Frost's argument that it was an award of damages. The award unequivocally ordered that "the discharge should be set aside and that grievant should be reinstated as a Tester Stenciler, with back pay for all but the first 30 days following her discharge." (emphasis supplied). In addition, Frost is in error when she attributes to the findings and conclusions of the arbitrator a determination that she was wrongfully discharged so as to give rise to an award of damages. The arbitrator merely found that Youngstown had fallen short of sustaining its "serious charge of time card fraud" as the cause for discharge, although Frost was "seriously negligent" in not correcting her time card to accurately reflect the hours worked and in having or permitting someone else to punch her card out some two hours after she had left for the day. The arbitrator did not state that there was not just cause for Frost's discharge. He stated only that Youngstown did not establish the cause alleged for the discharge.
From this we are unable to conclude that the award of back pay was, as a matter of law, an award of damages for wrongful discharge.
To the extent that Frost relies upon the collateral source rule to justify retention of the unemployment benefits as well as the back pay awarded by the arbitrator, it is at least in part dependent upon the premise that the arbitrator's award was for damages, a premise we have hereinabove rejected.
In any event, Frost's reliance upon the collateral source rule as a basis for retaining the unemployment benefits is misplaced. She correctly observes that a *461 wrongdoer may not diminish his liability for damages by partial compensation obtained from a collateral source. Cox v. Winklepleck (1971) 149 Ind. App. 319, 271 N.E.2d 737; Jackson v. Beard (1970) 146 Ind. App. 382, 255 N.E.2d 837. As noted in those cases, the rule precludes a wrongdoer from setting up compensation from a collateral source in mitigation of the damages for which the wrongdoer is responsible. In the case before us, it is the State which seeks recoupment of the benefits paid. The alleged wrongdoer, Youngstown, is not seeking to recoup the back pay awarded by the arbitrator. Therefore, while Frost might argue in the latter instance that Youngstown could not successfully deduct the amount of unemployment benefits from the amount of back pay awarded, we need not decide that question.

B.
Frost looks to the precise language of the statute and argues that it expressly limits deductible back pay awards to those made pursuant to a determination or agreement approved by the NLRB. The legislature's specific reference to NLRB awards of back pay makes her argument at least superficially appealing. The silence of the statute with regard to back pay awarded or gained other than through the NLRB renders arguably appropriate the general premise that when certain items are specified or enumerated in a statute, other items are by implication excluded. Maroon v. State of Indiana, Department of Mental Health (1st Dist. 1980) Ind. App., 411 N.E.2d 404.
While in the instant case there is indeed express enumeration of items of deductible income which does not include back pay achieved through arbitration, there is also a clear and unambiguous directive by the legislature that the enumeration is not exclusive. I.C. 22-4-5-1 contains the clause "`[d]eductible income' ... shall include, but shall not be limited to ..." (emphasis supplied). We deem such to be an expression of legislative intent that the specifications which follow are by way of example only. Where, as here, the specific words follow the general, the general term is restricted to things which are similar to those enumerated. 2A Sutherland, Statutes and Statutory Construction (4th ed. 1973) § 47.17.
We agree with Frost that the arbitrator's award of back pay did not constitute "remuneration for services" so as to be deductible under I.C. 22-4-5-1. Frost did not perform services for which the back pay was awarded. To the contrary, her discharge precluded the rendering of services thereby giving rise to the back pay award as payment "in lieu of compensation for services."
It must be acknowledged that to construe a back pay award as compensation in lieu of services renders the specific provision concerning NLRB back pay awards surplusage. Be that as it may, an arbitrator's award of back pay fits well within the definition of deductible income as it is developed by the enumerated examples.
We are cognizant of the prohibition against judicial legislation. We are also aware that oftentimes there is an almost imperceptible line between that prohibited judicial activity and permissible interpretation which provides legal guidance in the interstices. Indispensable to a determination of legislative intent is a consideration of the reasons and policy which underlie the statute and the goals sought to be attained. State v. Kokomo Tube Co. (2d Dist. 1981) Ind. App., 426 N.E.2d 1338. Concomitantly, it cannot be presumed that the General Assembly intended its language to be applied in an illogical manner inconsistent with the underlying policies and goals. Field v. Area Plan Commission of Grant County (4th Dist. 1981) Ind. App., 421 N.E.2d 1132. We think it the unmistakable intent of the General Assembly to preclude a person from retaining a windfall in the form of benefits to replace income lost during a period of unemployment when that person has received in back pay an amount equal to the lost income. Accordingly we hold that the Review Board was correct in its determination that the sum of $1,554.00 was deductible income subject to recoupment by the State.

*462 II.
Frost makes an additional assertion that "the referee's award [adopted by the Review Board as its decision] failed to give credit for the first thirty days of unemployment."
While we do not clearly grasp the tenor of the argument, it appears that Frost contends either that she was entitled to unemployment benefits for the 30 day period immediately following her discharge; or that the arbitrator erroneously denied back pay for that period; or that she is entitled to both amounts for that period. In this regard, she maintains that she is disqualified from unemployment benefits during the week in which the claim is filed and for the succeeding five weeks only if she was discharged for just cause. As earlier noted, there has been no determination as such of just cause for discharge or the lack thereof. Be that as it may, insofar as the record discloses, such contention was presented neither to the arbitrator, nor to the appeal referee, nor to the Review Board. It has therefore been waived. See Barnett v. Review Board (2d Dist. 1981) Ind. App., 419 N.E.2d 249; Dorozinski v. Review Board (1951) 121 Ind. App. 367, 98 N.E.2d 911.
The decision of the Review Board is affirmed.
BUCHANAN, C.J., and SHIELDS, J., concur.
NOTES
[1] A determination by the appeal referee that Frost was also overpaid $2,324.00 in Trade Readjustment Allowance was reversed by the Review Board. That issue was remanded to the deputy for redetermination and is not before us in this appeal.
[2] She did not receive retroactive wages for the weeks ending November 25, 1978, January 27, 1979 and March 3, 1979 because Frost would have been in a lay-off status during those weeks. But neither did Frost receive unemployment benefits for the latter two weeks. The discrepancy between the $1,628 actually paid Frost in benefits and the $1,554 determined to be overpayment represents the $74 weekly benefit received for the week ending November 25.
[3] I.C. 22-4-5-1 provides in pertinent part:

"Deductible income" ... shall include, but shall not be limited to ... payments in lieu of compensation for services; awards by the national labor relations board of additional pay, back pay or for loss of employment; ..."