**Wallace G. HOLMES, Appellant,**

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Abrams and Paul M. Hutson, As Members of And As Constituting the Review Board of the Indiana Employment Security Division, And Otis Elevator Company, Appellees.**

No. 2–283A71.

Court of Appeals of Indiana, Fourth District.

July 13, 1983.

---

Susan A. Failey, Legal Services Organization of Indiana, Inc., Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Claimant-appellant Wallace G. Holmes (Holmes) appeals a decision of the Review Board of the Indiana Employment Security Division (Board) denying Holmes unemployment compensation because his discharge by Otis Elevator Company (Otis) for absenteeism was for just cause.

Reversed.

ISSUE

Whether incarceration awaiting trial upon criminal charges later dismissed constitutes just cause for an employee's discharge for absenteeism.

FACTS

Holmes had been employed by Otis for five years, but was terminated for absenteeism on March 11, 1981. Otis's policy dealing with absenteeism was first an oral warning, next a written warning, and third suspension prior to discharge. Holmes had a chronic absenteeism problem which resulted in an oral warning by Otis given him on October 22, 1980. When the problem continued, he received a written warning on November 18, 1980. Finally on March 3, 1981, he was placed on three day suspension by Otis, all for absenteeism. When Holmes did not return to work at the end of his suspension on March 9th, Otis extended the suspension period to March 11th. When he did not return on that day, Otis terminated him.

Three felony counts had been filed against Holmes and a sizeable cash bond set. When he could not satisfy the bond after his arrest, Holmes was incarcerated in the Monroe County Jail and remained there during and after the suspension period imposed upon him by Otis. On March 12, 1981, the day after his discharge, Holmes's father advised Otis Holmes was being held in jail under bond.

After four and one-half months, the charges were dismissed, and Holmes was freed. Otis declined to reinstate Holmes to his former employment. Holmes sought unemployment compensation.

An Indiana Employment Security Division (IESD) deputy's finding of just cause for termination was reversed by an IESD referee who found Holmes's discharge for absenteeism was without just cause since he had not been convicted of a crime.

On appeal to the full Board, the referee's decision was reversed, the Board stating as its grounds for reversal:

The Review Board concludes that Claimant's reason for his absence after the expiration of his suspension was due to his incarceration which in itself is disqualifying and does not constitute good cause for failure to report to work.

It further finds that Claimant has failed to show good cause in connection with

work within the meaning and intent of Chapter 15–1 of the Act for his absence. Holmes appeals this decision.

## DISCUSSION AND DECISION

Ind.Code 22–4–15–1 reads in part:

(e) "discharge for just cause" as used in this section is defined to *include but not be limited to:* ...

(3) unsatisfactory attendance, if the individual cannot show *good cause* for absence or tardiness;

. . . . .

(8) incarceration in jail *following conviction* of a misdemeanor or felony by a court of competent jurisdiction ....
(Emphasis supplied.)

Although Holmes was incarcerated because criminal charges were filed against him, he was never convicted. The charges against him were dismissed.

Because he was not incarcerated following conviction, Holmes argues just cause for his termination did not exist, and he had good cause for being absent from his employment. "Only a claimant who has been incarcerated after conviction of a crime can be disqualified from receiving benefits," Holmes claims.

The Board, however, argues section (e)(8) cannot be so narrowly interpreted because the opening clause of the section uses the words "include but not be limited to," citing *Frost v. Review Board of the Indiana Employment Security Division,* (1982) Ind.App., 432 N.E.2d 459. In *Frost,* the Board sought to recover unemployment compensation benefits it had paid when Frost was reinstated and awarded back pay pursuant to a grievance she had filed. The statute defining "deductible income" contained the language "shall include, but shall not be limited to" followed by specific examples of such income. In his discussion of the subject, Judge Sullivan said:

IC 22–4–5–1 contains the clause " '[d]eductible income' ... shall include, but shall not be limited to ....'" ... We deem such to be an expression of legislative intent that the specifications which follow are by way of example only.

Where, as here, the specific words follow the general, the general term is restricted to things which are similar to those enumerated. 2A Sutherland, Statutes and Statutory Construction (4th ed. 1973) § 47.17.

*Frost, supra,* 432 N.E.2d at 461. Because substantially the same language appears in IC 22–4–15–1, the Board claims incarceration when criminal charges are filed which causes absenteeism resulting in discharge constitutes just cause therefor, and does not constitute good cause for being absent even though the employee was never convicted of a crime. The section (e)(8) language in question does not restrict just cause discharge to post-conviction incarceration only, it is merely one example of incarceration constituting just cause for discharge, according to the Board. Incarceration pending trial regardless of case disposition is another example of just cause incarceration, the Board in effect, argues.

The Board further states even though the Indiana Employment Security Act is social legislation and by its terms to be liberally construed, it must also be reasonably construed. A construction which forces an employer to hold open a job for an employee incarcerated because charged with crime is unreasonable and not within the purview of the statute, it posits.

This case does not present the question of whether an employer must hold open a job for an incarcerated employee charged with crime, as the Board contends. The question here is whether such employee is entitled to recover unemployment compensation benefits if he is discharged as a result of such incarceration, i.e., is discharge for absenteeism under such circumstances good cause under section (e)(3) or just cause under section (e)(8)?

We must first determine whether this statute is uncertain and ambiguous so as to require construction. *Indiana State Highway Commission v. White,* (1973) 259 Ind. 690, 291 N.E.2d 550. The statute does not tell us whether pre-trial incarceration is just cause for discharge, and that is the

question confronting us. Thus, we must construe the legislature's intent in this area by applying the fundamental rules for statutory construction which were succinctly enumerated by Buchanan, C.J., as follows:

To resolve the statutory question thus raised requires us to embrace certain maxims of statutory construction in order to ascertain and give effect to the intent of the legislature. Determination of legislative intent means an examination of the entire statute, prior versions, changes made, and the reasons for making them. We must also consider the goals sought to be attained by the legislation in question. We are bound to construe legislation "in such a way as to oppose prejudice to public interest." Statutes relating to the same subject matter must be construed together. Whenever possible, such statutes should be interpreted as harmonious, so as to give effect to each. And finally, social legislation is to be liberally construed in favor of those intended to benefit from it. (Citations omitted.)

*State v. Kokomo Tube Co.,* (1981) Ind.App., 426 N.E.2d 1338, 1345.

 It is fundamental in statutory construction a statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered, as well as the effect and consequences of such interpretation. *Woods v. Brown County Plan Commission,* (1983) Ind. App., 446 N.E.2d 973; *Indiana State Board of Tax Commissioners v. Ropp,* (1983) Ind. App., 446 N.E.2d 20; *Lemert Engineering Co., Inc. v. Monroe Auto Equipment Co., Inc.,* (1983) Ind.App., 444 N.E.2d 859. Also, statutes are to be construed in connection and in harmony with existing law, and as part of a general and uniform system of jurisprudence.

 As Gilkison, J., cogently stated the proposition:

In arriving at the meaning of a statute it must be considered as an entirety, each part being considered with reference to all the other parts. Statutes are not to

be considered as isolated fragments of law but as parts of one great system. (Citations omitted.)

Judge Elliott stated this proposition well in *Humphries v. Davis,* 1885, 100 Ind. 274, at page 284, 50 Am.Rep. 788, thus:

"A statute is not to be construed as if it stood solitary and alone, complete and perfect in itself, and isolated from all other laws. It is not to be expected that a statute which takes its place in a general system of jurisprudence shall be so perfect as to require no support from the rules and statutes of the system of which it becomes a part, or so clear in all its terms as to furnish in itself all the light needed for its construction. It is proper to look to other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the object of the statute, and to the condition of affairs existing when the statute was adopted. * * * Statutes are to be so construed as to make the law one uniform system, not a collection of diverse and disjointed fragments."

*Walgreen Co. v. Gross Income Tax Division,* (1947) 225 Ind. 418, 421, 75 N.E.2d 784, 785–86. With these tenets of construction in mind, we now construe the statute as it applies to these facts.

 We start with the proposition the Employment Security Act should be liberally construed in favor of employees because it is social legislation meriting such construction in order to promote its underlying humanitarian purposes. *Bowen v. Review Board of Indiana Employment Security Division,* (1977) 173 Ind.App. 166, 362 N.E.2d 1178; *Reese v. Review Board of Indiana Employment Security Division,* (1977) 172 Ind.App. 503, 360 N.E.2d 1262; *Hacker v. Review Board of Indiana Employment Security Division,* (1971) 149 Ind.App. 223, 271 N.E.2d 191; *Renwanz v. Review Board of Indiana Employment Security Division,* (1971) 148 Ind.App. 540, 267 N.E.2d 844; *Merkle v. Review Board of Indiana Employment Security Division,* (1950) 120 Ind.App. 108, 90 N.E.2d 524; *Review Board v. Mam-*

*moth Life and Accident Ins. Co.,* (1942) 111 Ind.App. 660, 42 N.E.2d 379. Where this act is fairly susceptible of more than one reasonable interpretation it is to be construed in such manner as to effectuate the humanitarian intention of the legislature in enacting it. *Reese v. Review Board of Indiana Employment Security Division,* (1977) 172 Ind.App. 503, 360 N.E.2d 1262.

■ The legislature has given us a clear statement of legislative intent in this field, namely, IC 22–4–1–1 wherein it declares the public policy of this state concerning payment of unemployment compensation:

Sec. 1. As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale and welfare of the people of this state and to the maintenance of public order within this state .... The enactment of this measure to provide for payment of benefits to persons *unemployed through no fault of their own,* ... is ... essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state. (Emphasis supplied.)

The words "fault" and "just cause" as used in the Employment Security Act mean failure or volition. They do not mean something which is blameworthy, culpable, or worthy of censure. *Wakshlag v. Review Board of Indiana Employment Security Division,* (1980) Ind.App., 413 N.E.2d 1078, 1082; *Walter Bledsoe Coal Co. v. Review Board of Indiana Employment Security Division,* (1943) 221 Ind. 16, 46 N.E.2d 477.

It is readily apparent Holmes was not absent from work by his own volition or conscious choice, nor was he absent because of any shortcoming or failure on his part. He was absent solely because he was incar-

cerated in the Monroe County Jail under criminal charges duly filed against him. He was incarcerated due to the lawful act of the third parties who incarcerated him, not because of any act or omission he committed. To say it was Holmes's fault he was incarcerated because criminal charges were filed would be to deny him his presumption of innocence.

Presumption of innocence is one of the basic elements which binds our society together. *Riggs v. State,* (1958) 237 Ind. 629, 630, 147 N.E.2d 579, 580.[1] Even though that principle is fundamental criminal law, we do not hesitate to consider it on the civil side while construing this statute. It is an integral part of our uniform system of jurisprudence. *Walgreen Co., supra.*

When the legislature used the language "incarceration in jail *following conviction,*" it meant that language to be *exclusive* rather than a mere example. In other words, by including the words "incarceration *following conviction*" as part of the definition, it intended to exclude all other forms thereof, including pre-trial incarceration.[2]

We do not read *Frost* as requiring an unlimited expansion of each of the subparagraphs of IC 22–4–15–1, as the Board seemingly contends. The *Frost* principle tells us the subsectional examples numbered one through eight are not exclusive. Other just causes for discharge undoubtedly exist, but are not set forth in the statute as numbered subsections thereof. In *Ervin, infra.,* Hoffman, J., discussing this statute, pointed out:

In determining the legislative intent of a statute, we must examine the language of the statute itself. *City of Muncie et al. v. Campbell* (1973), 156 Ind.App. 59, 63, 295 N.E.2d 379, 382 (transfer denied). Because the statutory definition of "discharge for just cause" includes but is not limited to the specific conduct enumerat-

---

1. Our statutes, in effect, codify this presumption. IC 35–41–4–1 reads in part

Sec. 1. (a) A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt....

See, also, Commentary, Presumption of Innocence, by Charles A. Thompson, West's Ann.

Ind.Code, main volume for this section, pages 304–306.

2. In Latin, the phrase is *Inclusio Unius Est Exclusio Alterius.* The inclusion of one is the exclusion of another ... *Black's Law Dictionary,* Revised Fourth Edition, West Publishing Co. (1968).

ed, the Legislature did not intend to limit the definition to the conduct specifically listed. *See, Hough v. Zehrner et al.* (1973), 158 Ind.App. 409, 413, 302 N.E.2d 881, 883 (transfer denied).

*Ervin v. Review Board,* (1977) 173 Ind.App. 592, 596, 364 N.E.2d 1189, 1192. There, the claimant had been discharged for an improper sexual advance made to a female employee. He argued on appeal "improper sexual advances are not a statutory reason for discharge for just cause."

■ Our construction, creates no conflict among the various parts of this statute. Thus, we must adopt it because we are required to adopt that construction which sustains the act, carries out its purpose, and renders all parts thereof harmonious. *Park 100 Development Co. v. Indiana Department of Revenue,* (1981) Ind., 429 N.E.2d 220, 222–223; *Indiana Department of Revenue v. Glendale-Glenbrook Associates,* (1981) Ind., 429 N.E.2d 217, 218–219; *Lindley v. State,* (1978) 268 Ind. 83, 373 N.E.2d 886, 888; *Garvin v. Chadwich Realty Corp.,* (1937) 212 Ind. 499, 512–513, 9 N.E.2d 268, 273; *Brown v. Gardner,* (1974) 159 Ind.App. 586, 589–590, 308 N.E.2d 424, 427, 26 I.L.E. Statutes § 123 (1960).

■ Pre-trial incarceration due to the filing of criminal charges later dismissed constitutes good cause under subsection (e)(3) and is not just cause under subsection (e)(8) of IC 22–4–15–1.

In view of our decision, it is unnecessary to discuss other issues raised in this appeal.

Reversed and remanded for further proceedings consistent with this opinion.

MILLER, J., concurs.

YOUNG, P.J., dissents without opinion.