IN THE MATTER OF THE ESTATE OF ROBERT PAUL CASSNER, DECEASED.

[No. 2-774A183. Filed April 10, 1975.]

*Theodore L. Sendak,* Attorney General, *Glenn Richard Potter,* Deputy Attorney General, for appellant.

*T. Michael Smith,* of Indianapolis, Amicus Curiae, for executor of the Estate of Robert Paul Cassner, Deceased.

## CASE SUMMARY

BUCHANAN, J.—Petitioner-Appellant, the State of Indiana (State), appeals from a Judgment excluding from Indiana Inheritance Tax accumulated life insurance policy dividends on the life of Robert Paul Cassner.

We affirm.

## FACTS

On June 9, 1972, Robert Paul Cassner (the Deceased), a resident of Marion County, Indiana, died testate, leaving his entire estate to his daughter, Sandra Lee Cassner.

He was the owner of four separate life insurance policies, with a total face value of $13,000, each of which named his wife, Mary Agnes Cassner, beneficiary. In addition to the face amount of the policies, there existed accumulated dividends, post-mortem dividends and termination dividends totaling $1,623.30.

None of these policies are included in the Record.

On March 22, 1973, the learned judge of the Marion Probate Court entered an Order determining the net value of the estate, which amount did not include the dividends, thereby

entitling the beneficiary to receive these dividends as "proceeds" of life insurance free of Indiana Inheritance Tax.

The contested amount of Inheritance Tax involved is $45.00. The State appeals that determination.

## ISSUE[1]

Are termination, accumulated, and post-mortem dividends of life insurance policies payable other than to a decedent's estate part of "proceeds of life insurance" and therefore not subject to Indiana Inheritance Tax?

The State contends that the term "proceeds of life insurance policies" is the *face value* amount of such policies only and excludes all dividends because a life insurance policy is a risk-shifting and investment mechanism.

The Executor argues that accumulated, post-mortem and termination dividends have never been subject to the Indiana Inheritance Tax and the State is seeking judicial legislation via statutory construction interpreting the Indiana law contrary to existing Federal Taxation Statutes which treat insurance proceeds as including such dividends.

## DECISION

CONCLUSION—It is our opinion that "proceeds of life insurance" as used in the Indiana Inheritance and ▮▮ Estate Tax Statute includes accumulated, post-mortem and termination dividends.

The essence of this controversy is to determine whether

---

1. The attorney for the Executor of the Deceased's estate appearing before this Court as Amicus Curiae raised three additional issues, but at oral argument both parties agreed to waive these issues.

Further, we do not consider the remaining issue moot (the Inheritance Tax due has been paid by the Executor and the estate has been closed), because the nature of the question ". . . involve[s] matters of great public interest and one which could well affect the public generally." *State ex rel.* v. *Morgan Superior Court* (1967), 249 Ind. 220, 222, 231 N.E.2d 516, 518. *See also, City of Indianapolis* v. *Indiana St. Bd. of Tax Comm'rs* (1973), Ind. App., 294 N.E.2d 136 (transfer granted, appeal dismissed at 308 N.E.2d 868); *Dittmer* v. *City of Indianapolis* (1968), 143 Ind. App. 621, 242 N.E.2d 106; *State ex rel. Smitherman* v. *Davis* (1958), 238 Ind. 563, 151 N.E.2d 495.

the word "proceeds" of life insurance policies is to be narrowly defined so as to include only the face value of the policy. The State's interpretation is that dividends from the policy are *not* part of the "proceeds" payable to a person(s) other than the decedent's estate and are therefore subject to Inheritance Tax.

IC 1971, 6-4-1-1, Ind. Ann. Stat. § 7-2401 (Burns Code Ed.) (the Statute), specifically excludes or exempts[2] from Inheritance Tax "proceeds" of life insurance policies payable for the use of a person(s) other than the estate. In pertinent part it provides:

> "*Inheritance and transfers tax.—A tax is hereby imposed,* under the conditions and *subject to the exemptions* and limitations *hereinafter described, upon all transfers,* in trust or otherwise, of the following property, *or any interest therein or income therefrom:*
>
>           \*    \*    \*
>
> "*Proceeds of life insurance policies* on the life of a decedent payable in such a manner as to be subject to claims against his estate and to distribution as a part thereof shall be hereunder held to be a part of the estate, but *payable either directly or in trust for the use of any person or persons other than the estate so that it does not become a part thereof or subject to such claims, said proceeds shall not be taxed.*" (Emphasis supplied.)

The first paragraph of the above-quoted Statute is part of Section 1 of Chapter 75 of Acts of 1931. This first paragraph entitled "Inheritance and Transfers Tax" sets the tone of this legislative enactment. It evidences an intent to impose a transfer tax upon *"all* transfers" of property or *"any interest therein or income therefrom".*

The next part of the quoted portion of the Statute is the seventh paragraph of Section 1 of Chapter 75 of Acts of 1931, and carries forward the intent to tax transfers of proceeds of life insurance policies on the life of a decedent payable to his estate or in such manner that such proceeds are

---

2. While the Inheritance Tax Act lists certain specific exemptions in IC 6-4-1-3 (Burns § 7-2403), reference is also made to exemptions which appear in IC 6-4-1-1 (Burns § 7-2401), including the one under consideration.

subject to claims of the estate and then it creates an exemption from taxation those life insurance policies proceeds payable to a named person or persons so as not to be subject to claims against the estate.

Reading the two paragraphs together, one could reasonably conclude that if the income is to be included in the property subject to tax, then the income from property exempted from tax would likewise be included in the exemption. A sword that cuts both ways.

The all-inclusive intent expressed by the first paragraph would also seem to be consistent with a broad definition of the word "proceeds" as the seventh paragraph treats proceeds only on the basis of whether the life insurance policies are *payable*[3] directly to the estate or for the benefit of a person other than the deceased and so not subject to the claims of creditors.

There is no indication in these two or other parts of the Inheritance Tax law which supports a narrow definition of "proceeds". To the contrary, from the language used, the intent of the Legislature appears to express a desire to tax all transfers of property or any interest therein or income therefrom, and likewise to exclude all "proceeds" of life insurance payable other than to the decedent's estate . . . all without reference to finespun distinctions. A meat axe, not a scalpel, was used. So we can see no basis for narrowly construing the word "proceeds" on the face of the Statute.

Bound as we are in ascertaining the meaning of a statute to effectuate the intent of the Legislature, we must do so by looking at the whole act and not merely an isolated word or phrase. Thus the intent cannot be determined:

". . . by taking words on a selective basis from various portions of a statute and implying to these words special

---

3. The life insurance policies on the life of the Deceased are not included in the Record but both parties treat the face amount and the dividends as being payable to the Deceased's wife as the named beneficiary.

meaning out of context from the remainder of the statute. . . ." *Abrams* v. *Legbrandt* (1974), 160 Ind. App. 379, 388, 312 N.E.2d 113, 118.

See also,

*Morgan Co. REMC* v. *Indianapolis Power & Light Co.* (1973), Ind. App., 293 N.E.2d 237; *Engle* v. *City of Indianapolis* (1972), 151 Ind. App. 344, 279 N.E.2d 827; *State ex rel. Baker* v. *Grange* (1929), 200 Ind. 506, 165 N.E. 239; *Garvin* v. *Chadwick Realty Corp.* (1937), 212 Ind. 499, 9 N.E.2d 268; *Bash, et al.* v. *Evans* (1872), 40 Ind. 256; 26 I.L.E. Statutes § 123.

The State focuses on the word "proceeds" as being an insurance term involving risk-shifting and investment common to insurance contracts. In particular, the State relies on *Cahen Trust* v. *United States,* 292 F.2d 33 (7th Cir. 1961), and *In re Hamilton's Estate* (1945), 113 Col. 141, 154 P.2d 1008. In *Cahen* the court was construing a trust and by way of dicta indicated that the insurer was bound to pay the face of the policy on the death of the insured. More to the point is *In re Hamilton's Estate*—in which the Colorado Supreme Court construed a similar but not identical inheritance tax statute as excluding from the proceeds of life insurance policies accumulated disability payments. In doing so it stated a naked conclusion without benefit of reasoning or authority . . . and then went on to the main point of the case which related to the incidents of ownership on certain life insurance policies.

It is true that in the area of insurance law the State's assertions have some merit in that interpretation of life insurance policies for purposes of payment of the proceeds have defined proceeds in terms of a risk-shifting contract. *See* 46 C.J.S., INSURANCE, § 1179, pp. 88-89. However, our concern here is primarily with tax law, i.e., the applicability of principles of taxation which incidentally touch and concern insurance law. The State does not cite, nor are we aware of, authority that dictates application of insurance law only. To the contrary, a large body of law surrounds state and federal taxation, including the interpretation of state taxing statutes . . . and the application of certain of these principles in our opinion overbalances court decisions deciding the essential

nature of the life insurance policy and the payment of proceeds thereunder in disputes between private parties. *City of Muncie* v. *Campbell* (1973), 156 Ind. App. 59, 295 N.E. 2d 379; *State ex rel. State Bd. of Tax Comm'rs* v. *Daviess Circuit Court* (1967), 249 Ind. 580, 230 N.E.2d 761; *Board of Comm'rs of Marion County* v. *Board of School Comm'rs of City of Indianapolis* (1960), 130 Ind. App. 506, 166 N.E.2d 880; *State* v. *Doversberger* (1972), 153 Ind. App. 563, 288 N.E. 2d 585; *Wayne Township* v. *Brown* (1933), 205 Ind. 437, 186 N.E. 841; *Merchants National Bank of Muncie* v. *Delaware School Tp. of Delaware Cty.* (1916), 185 Ind. 658, 114 N.E. 450; *Conn* v. *Board of Comm'rs of Cass Cty.* (1898), 151 Ind. 517, 51 N.E. 1062; *Adkins* v. *Indiana Employment Sec. Div.* (1947), 117 Ind. App. 132, 70 N.E.2d 31. Such considerations are pertinent but not controlling. *State ex rel. Martin* v. *Graham* (1915), 183 Ind. 53, 108 N.E. 111; *Starr* v. *City of Gary* (1934), 206 Ind. 196, 188 N.E. 775; *W. H. Dreves, Inc.* v. *Osolo School Tp. of Elkhart Cty.* (1940), 217 Ind. 388, 28 N.E.2d 252; *Thompson* v. *Thompson* (1972), 259 Ind. 266, 286 N.E.2d 657; *State Bd. of Tax Comm'rs* v. *Oliverius* (1973), 156 Ind. App. 46, 294 N.E.2d 646; *Murray* v. *Zook* (1934), 205 Ind. 669, 187 N.E. 890; *Walgreen Co.* v. *Gross Income Tax Div.* (1947), 225 Ind. 418, 75 N.E.2d 784; *State ex rel. Clemens* v. *Kern* (1939), 215 Ind. 515, 21 N.E.2d 141.

As neither party finds Indiana authority directly in point, nor do we, the issue must be resolved by reference to rules of statutory construction.

So far by the process of applying the "plain", "ordinary", and "usual sense"[4] of the word "proceeds" as used in this

---

4. IC 1971, 1-1-4-1, Ind. Ann. Stat. § 1-201 (Burns Code Ed.):
   "*Statutes, how construed.*—The construction of all statutes of this State shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute:
   "First. Words and phrases shall be taken in their plain, or ordinary and usual sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import. . . ."

taxation statute, we have concluded that no special or technical meaning is to be attached to that word. We are aided in doing so by other rules of statutory construction.

Tax statutes in Indiana have been liberally construed in favor of the taxpayer:

"It has been consistently held, however, that in case of doubt as to the meaning or applicability of the Indiana Gross Income Tax Act . . ., it will be construed against the state and in favor of the taxpayer. Gross Income Tax Div. v. L. S. Ayres & Co. (1954), 233 Ind. 194, 118 N.E.2d 480; Gross Income Tax Div. v. Colpaert Realty Corp. (1952), 231 Ind. 463, 109 N.E.2d 415." *Indiana Dept. of State Revenue* v. *Boswell Oil Co.* (1971), 148 Ind. App. 569, 573, 268 N.E.2d 303, 305.

While Indiana tax statutes in general may have enjoyed liberal construction favoring taxpayers, gross income and real estate tax *exemptions* have not been so treated:

"Where an exemption is sought *as opposed to construction of a meaning or applicability of a tax statute,* it has been consistently held that statutes will be strictly construed against the party claiming exemption." (Emphasis supplied.) *Madding* v. *Indiana Dept. of State Revenue, G.I.T.D.* (1971), [149] Ind. App. [74], 270 N.E.2d 771, 780-81.

". . . it has long been held by our Supreme Court and by this court that statutes exempting property from taxation are not favored and are therefore strictly construed. [Citations omitted.]" *Indiana State Bd. of Tax Comm'rs* v. *International Business College, Inc.* (1969), 145 Ind. App. 353, 251 N.E.2d 39, 43.

See also,

State Bd. of Tax Comm'rs v. Fort Wayne Sports Club, Inc. (1970), 147 Ind. App. 129, 258 N.E.2d 874; *Indiana Dept. of State Revenue* v. *Boswell Oil Co., supra; Gross Income Tax Div.* v. *National Bank & Trust Company* (1948), 226 Ind. 293, 79 N.E.2d 651; *State Bd. of Tax Comm'rs* v. *Trustees of Adoniram Lodge* (1969), 145 Ind. App. 300, 250 N.E.2d 605; *State Bd. of Tax Comm'rs* v. *Warner Press, Inc.* (1969), 145 Ind. App. 20, 248 N.E.2d 405; *State Bd. of Tax Comm'rs* v. *Methodist Home for Aged* (1968), 143 Ind. App. 419, 241 N.E.2d 84.

On the other hand, our Supreme Court has liberally construed *Inheritance Tax exemptions* in favor of the taxpayer.

The most recent decision resolving doubt against the taxing authority is *Indiana Dept. of State Revenue, I.T.D.* v. *Estate of Weinstein* (1967), 141 Ind. App. 399, 229 N.E.2d 741. The Appellate Court on rehearing stated, "We are cognizant of the attitude of the Supreme Court [of Indiana] that the Inheritance Tax Act be interpreted and construed in favor of the taxpayer", and then went on to quote at some length from an earlier Supreme Court opinion, *Inheritance Tax Div., etc.* v. *Estate of Alexander* (1953), 232 Ind. 661, 115 N.E.2d 747:

> " 'We have long held that to authorize the collection of a gross income tax a transaction must come clearly within the statutory provisions therefor. In case of doubt the statute will be construed against the state and in favor of the taxpayer. [Citations omitted.]
>
> " '*We think the same rule applies in the assessment of taxes under the Indiana Inheritance tax law.* The rule of the United States Supreme Court, and in most of the states, is well expressed as follows:
>
> " ' ". . . It has been declared in a number of cases that *inheritance tax laws* are not to be stretched beyond their reasonable meaning, but rather in case of doubt are to be construed with some strictness, and indeed that whatever doubt exists in such a measure *must be resolved against the taxing authority.*" [Citations omitted.]' " (Emphasis supplied.)

141 Ind. App. at 404-405, 229 N.E.2d at 744. And even more specifically:

> "In line with the rule as to construction of taxing statutes in favor of taxpayer, it has been declared that *words of exemption found in an inheritance tax law are to be liberally construed.*" (Emphasis supplied.) 232 Ind. at 667, 115 N.E.2d at 749.

Thus by virtue of the exception carved out and preserved by *Alexander's Estate* and *Estate of Weinstein*, the words of exemption found in the Statute should be liberally construed in favor of the taxpayer.

Also implementing our view that "proceeds" includes policy dividends is the presumption that the Indiana Legislature was

aware of other tax statutes when the Indiana Inheritance and Estate Tax Act was enacted in 1931:

". . . this Court must not ignore the rule that there is a strong presumption that the Legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject." *Morgan Co. REMC Corp.* v. *Indianapolis Power & Light*, 260 Ind. 164, 168, 302 N.E.2d 776, 778.

*See also,*

*McClarnon et al.* v. *Stage, Executor, et al.* (1939), 215 Ind. 157, 19 N.E.2d 252.

While there were no Indiana laws on this subject, there were federal laws. Federal Taxation Statutes—specifically, Internal Revenue Code §§ 101 and 2042 and the forerunners of these sections—exempt from the beneficiary's income those proceeds from insurance policies (received in a lump sum) and include in decedent's gross estate "the amount receivable by the executor [and by all other beneficiaries] as insurance under policies on the life of the decedent".

Section 2042 of the Code is implemented by Internal Revenue Form 712. Examination of the Record reveals that copies of the four Form 712's (one for each insurance policy owned by the decedent) clearly indicated on line 12 the "amount of proceeds if payable in one sum" included not only the face value of the policy, but *all* termination, post-mortem, and accumulated *dividends*.

Thus, for taxation purposes, the Federal Government has traditionally treated "proceeds" as including the total amount payable by the insurance company as one sum. *See* 34 Am. Jur. 2d, FEDERAL TAXATION ¶¶ 5170, *et seq.*, and 8630, *et seq.*

By engaging in the presumption we can presume that the Legislature was aware of the precedent extant in the Federal Taxation Statutes and followed suit.

And last but not least, we are mindful that for over forty years the State of Indiana (like the Federal Government) has treated life insurance proceeds for Inheritance and Estate

Tax purposes as including the total amount payable by the insurance company to a named beneficiary. In an official Attorney General Opinion dated November 28, 1961, the State expressed its approval of *Indiana Dept. of State Revenue* v. *Alexander's Estate, supra.* Opinion No. 60 dealt with the question of whether lump-sum benefits payable pursuant to the Railroad Retirement Act and the Social Security Act were taxable for inheritance tax purposes. In concluding that such benefits payable directly to a named beneficiary were *not* subject to the Indiana inheritance tax, the Attorney General stated:

> "Before concluding, it should be noted that the sixth grammatical paragraph of Burns 7-2401, *supra,* exempts from the Indiana inheritance tax
>
> " 'Proceeds of life insurance policies . . . payable either directly or in trust for the use of any person or persons other than the estate so that it does not become a part thereof. . . .'
>
> ". . . [I]n one sense, the Railroad Retirement Act and the Social Security Act constitute a form of insurance provided by federal law. Because the proceeds from life insurance policies payable directly to named beneficiaries are not taxable under the Indiana Inheritance Tax Law, it may be observed that to conclude that benefits payable under the Railroad Retirement Act and the Social Security Act (if considered to be in the nature of insurance) are, likewise, not subject to the Inheritance Tax Law, when payable directly to beneficiaries, is in harmony with the theory of the Indiana law that income of such character becomes subject to taxation only if it becomes a part of the assets of the estate so as to be subject to the payment of claims against the estate and distributable either pursuant to the terms of a will or by reason of the laws of intestate succession." Atty. Gen. Op. 1961, p. 385.

Having so long ratified and acquiesced in exclusion of dividends from tax, it now ill befits the State at this late date to seek a contrary judicial interpretation rather than seeking legislative action.[5]

---

5. "Acquiescence and ratification also are closely related and have elements in common with estoppel. . . . [A]cquiescence embraces all elements of estoppel and assent to the act or conduct, with full knowledge, by words or conduct during the progress of a transaction; and

The State's unquestioned acquiescence in this exclusion and the public's long reliance upon the State's interpretation of the Statute, predisposes us to accept the established interpretation, absent a compelling reason otherwise.[6]

The all-inclusive intent of the first paragraph of the Statute, the general intent of the Statute to exclude life insurance policies payable otherwise than to the decedent's estate, the liberal construction favoring taxpayers as to exemptions from the Inheritance Tax Act, the federal tax treatment of such proceeds, and the history of state administrative interpretation of the Statute, all combine to shape our conclusion.

Our conclusion that accumulated, post-mortem, and termination dividends are "proceeds" within the meaning of the exemption of the Statute is limited to those arising out of life insurance contracts entered into primarily as a risk-shifting device and not for investment purposes.

Thus we reject the State's view of the Statute which narrowly focuses on the word "proceeds". We conclude it must be appraised in greater breadth, as though being viewed through an open door—not as though being viewed through the keyhole.

The decision of the Probate Court is accordingly affirmed.

Hoffman, J. (participating by designation) concurs.

Sullivan, P.J. concurs in result only.

ratification suggests an assent or confirmation after the fact, and also implies a voluntary and positive act or choice.

"Acquiescence has also been regarded as a species of waiver."
[Citations omitted.] 31 C.J.S. ESTOPPEL § 113, p. 587.
See also,
Stockstrom v. Commissioner (1951), 88 U.S. App. D.C. 286, 190 F.2d 283; Lesavoy Foundation v. Commissioner, 238 F.2d 589 (3rd Cir. 1956); H.S.D. Co. v. Kavanagh, 191 F.2d 831 (6th Cir. 1951); Vestal v. Commissioner (1945), 80 U.S. App. D.C. 264, 152 F.2d 132.

6. This is not to suggest that any legal barrier prevents a state administrative agency from reversing its policy.
F.C.C. v. WOKO (1946), 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204; Shawmut Ass'n v. S.E.C., 146 F.2d 791 (1st Cir. 1945); N.L.R.B. v. National Container Corp., 211 F.2d 525 (2d Cir. 1954); Virginian R. Co. v. United States (1926), 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463; N.L.R.B. v. Grace Co., 184 F.2d 126 (8th Cir. 1950).