STATE of Indiana, INDIANA DEPARTMENT OF STATE REVENUE INHERITANCE TAX DIVISION, Appellant (Plaintiff Below),

v.

Edward H. DALEY, Executor of the Estate of John Scott Deceased, Appellee (Defendant Below).

No. 2–480A109.

Court of Appeals of Indiana, Fourth District.

April 29, 1982.

Theodore L. Sendak, Atty. Gen., Jeffrey L. Hunter, Deputy Atty. Gen., Indianapolis, for appellant.

George W. Obear, James R. Huffer, Delphi, for appellee.

MILLER, Presiding Judge.

Appellant Indiana Department of State Revenue, Inheritance Tax Division (Department) is appealing a judgment of the Carroll Circuit Court, Probate Docket, which held that an *inter vivos* trust of over $15,-000 established by John Scott, deceased, did not create a transfer subject to inheritance tax under IC 1971, 6–4–1–1 (since repealed and recodified)[1] except to the extent of

---

1. IC 6–4–1–1 was repealed by Acts 1976, P.L. 18 § 2, and recodified at Ind.Code 6–4.1–1–1 *et seq.*

2. This same language is found in the current statute, Ind.Code 6–4.1–2–4.

3. The current statutory provision, Ind.Code 6–4.1–2–6, states:
   "If a transferor transfers property by a deed of trust in such a manner that he reserves to:
   (1) himself any interest; or

Scott's possibility of reverter, valued at about $240. The Department contends the entire trust is subject to taxation under either of two statutory provisions: 1) because the trust was a property interest transfer "intended to take effect in possession or enjoyment at or after the death of the transferor"[2] within the meaning of IC 6–4–1–1; and 2) because, in any event, the property was transferred by a trust "wherein the trustor reserved to himself *any* income or interest."[3] IC 6–4–1–1. (Emphasis added.) Without considering the merits of its first contention, we conclude the Department's second theory requires us to reverse the trial court's judgment, since it is apparent that under the express provision of IC 1971, 6–4–1–1, where a trustor retains *any* interest in property transferred by trust, the entire property "subject to" such retained interest (and not just the value of the interest itself) is taxed. IC 6–4–1–1.

The basic facts may be summarized as follows: John, Walter and Mary Scott, unmarried brothers and sister, lived on a farm jointly owned by them. They cultivated the farm with the aid of two employees, Samuel and Eunice Smith, both age 60. The three Scotts each provided in their respective wills for the Smiths' rent-free, continued occupancy of a small residence on the Scott farm. On August 7, 1972 when John Scott, age 81, was advised Walter would soon die (he passed away one week later), he executed the following trust instrument:

"I hereby grant and deliver to Edward H. Daley and Union Bank and Trust Company of Delphi, Indiana, as co-trustees, and in trust, the sum of Fifteen

(2) himself and others power of revocation, alteration, or amendment which if exercised would cause the property to revert to the transferor, then inheritance tax imposed as a result of the transferor's death applies to the transfer. The value of the property so transferred equals the value of the property subject to the powers, and in respect to which the powers remain unexercised, at the time of the transferor's death."

Thousand Two Hundred Dollars ($15,-200.00) upon the following uses and purposes, to-wit:

(a) to invest and reinvest said sum and to accumulate interest thereon, and to pay to Samuel Smith and Eunice Smith, who are husband and wife, and to the survivor of them so long as either of them shall live, the sum of One Hundred Fifty Dollars ($150.00) each month; provided, *however, such payments shall commence within thirty (30) days following my death.*

(b) *Upon the death of the survivor of Samuel Smith and Eunice Smith, the trustee shall promptly pay any balance remaining in the trust estate, including either the principal thereof or interest accrued thereon, to myself if I am then living,* and if I am not then living, the trustee shall distribute the balance of such fund to the following named persons in equal shares: [John's five nephews]. . . ." (Emphasis added.)

The trust corpus was funded by two certificates of deposit (each jointly owned by John and Walter) valued at $12,300 and other property (belonging solely to John Scott) worth $2,900.

John Scott passed away on October 22, 1974 and his will was admitted to probate on October 29. His executor filed a "Schedule of All Property" and "Affidavit for Inheritance Tax Appraisement" on July 14, 1975 and four days later the inheritance tax appraiser filed his report which listed the inheritance tax due. Neither the executor nor the appraiser listed the trust. However, on October 14 the Department filed a "Petition for Rehearing, Reappraisement and Redetermination of Inheritance or Transfer Tax," alleging John Scott's 1972 trust arrangement constituted a taxable transfer under IC 6-4-1-1. After a hearing on the petition, the trial court found the interest created in the Smiths and the five nephews was not subject to inheritance tax because it constituted a present irrevocable gift effective on the date John signed the trust agreement. Without further explaining its reasoning, the court did find John possessed a taxable possibility of reverter with a date-of-death value of $238.78, and ordered the "Schedule of All Property" be amended to include *only* the reverter's value.

## DECISION

Prior to its recodification the relevant language of IC 6-4-1-1 provided:

"Inheritance and transfers taxed.—A tax is hereby imposed, under the conditions and subject to the exemptions and limitations hereinafter described, upon all transfers, in trust or otherwise, of the following property, or any interest therein or income therefrom:

When the transfer is from a resident of this state, of real property situated in this state, or of any tangible personal property except such as has an actual situs without this state, or of any and all intangible personal property wherever situated.

When the transfer is from nonresidents or persons not inhabitants of this state, of all real or personal property within the jurisdiction of this state.

All transfers enumerated in this section shall be taxable, if made by will; or if made by the statutes regulating intestate descent; or if made in contemplation of death of the transferor, and any transfer of property made by a person within two [2] years prior to death, shall, unless shown to the contrary, be deemed to have been made in contemplation of death; *or if made by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor*; or if made in payment of a claim against the estate of a deceased person arising from a contract or antenuptial agreement made by him and payable by its terms by will or contract at or after his death; and if any transfer falling under the foregoing provisions is made for valuable consideration, excepting love and affection, so much thereof as is the equivalent in money value of consideration received by the transferor shall not be taxed but the remaining portion shall be.

*A transfer of property by deed of trust, heretofore, or hereafter made, wherein the trustor reserved to himself any income or interest, or reserved to himself and others, powers of revocation, alteration or amendment, upon the exercise of which the property would revest in him, shall, upon the death of the trustor, be taxable to the extent of the value of the property subject to such powers and [in] respect to which such powers remain unexercised.*

*If property is transferred, to executors, or trustees, in lieu of their commissions, allowances or fees, the excess in value of the property so transferred, above the amount of commissions, allowances or fees, which would be payable in the absence of such transfer, shall be taxable."* (Emphasis added.)

As noted above, the Department contends the entire trust is taxable under either of the emphasized provision of IC 6–4–1–1 quoted above. In response, the Estate asserts that although it "willingly" paid tax on the value of the possibility of reverter "[i]n an attempt to discourage further litigation of this matter," in fact no part of the trust was properly subject to taxation due to the remoteness of Scott's revisionary interest.

Although the Department has argued with conviction (and some merit) the entire trust should be taxed as a transfer "intended to take effect in possession or enjoyment" at or after John Scott's death,[4] we believe we must look no further, given the facts of the case, than the express statutory provision taxing transfers in trust where the trustor reserved himself "any income or interest." Such provision explicitly taxes "the value of the property *subject to*" the retained power. IC 6–4–1–1, *supra* (emphasis added.)

Admittedly, our research has not disclosed any guidance from the courts of this State in applying IC 6–4–1–1 to a trust where the settlor has expressly reserved a possibility of reverter such as Scott's. However, our courts have long recognized the rule of statutory construction that where a legislative enactment is clear and unambiguous on its face, there is no occasion for a court on appeal to presume to interpret or construe the provision in furtherance of some perceived legislative design. *E.g., Burks v. Bolerjack,* (1981) Ind., 427 N.E.2d 887; *Whitacre v. State,* (1980) Ind., 412 N.E.2d 1202; *Grody v. State,* (1972) 257 Ind. 651, 278 N.E.2d 280; *Schwartzkopf v. State ex rel. Fettig,* (1965) 246 Ind. 201, 204 N.E.2d 342; *Reome v. Edwards,* (1948) 226 Ind. 229, 79 N.E.2d 389.

Applying this indisputable principle of statutory construction to the instant case leads to the conclusion that at least *some* part of Scott's trust should be taxed in his estate, since IC 6–4–1–1 expressly imposes a tax whenever the trustor retains *any* income *or interest.* In light of such clear statutory language, we cannot agree with the Estate that IC 6–4–1–1 is inapplicable because of the *nature* of Scott's retained interest. Our conclusion in this regard is directed not only by the express and unambiguous language of the taxation statute itself; but also by the reasoning of other courts which have considered whether a "remote" possibility of reverter will cause a trust to escape taxation in the decedent's estate. *See generally* the cases cited in Annot., "When Transfer Deemed to Take Effect in Possession or Enjoyment at or After Death Within Succession, Estate, and Inheritance Tax Laws," 167 A.L.R. 438, 448 (1947).

This question of a "remote" possibility of reverter was considered, for example, by the California Court of Appeals in *In re Estate of Moore,* (1972) 29 Cal.App.3d 481, 105 Cal.Rptr. 568, in the context of the

---

4. In this regard, the statute taxes essentially testamentary dispositions whether made "in trust or otherwise." IC 6–4–1–1, *supra.* Application of the "intended to take effect in possession or enjoyment" clause is considered in *In re Estate of Bannon,* (1976) 171 Ind.App. 610, 358

N.E.2d 215, where it is suggested Indiana is a so-called "ownership" state which imposes a tax under this provision of the statute only where there is 1) a transfer from the decedent; 2) of an interest in property which the decedent owned at death.

phrase "intended to take effect in possession or enjoyment at or after death." There, the Court held an irrevocable *inter vivos* trust was taxable in the decedent's estate to the extent of the property subject to possible reversion, despite the fact the whole of the trust would come to the decedent only if she survived all of her children who in turn were predeceased by all of their issue. The Court in *Moore* held it was constrained to reach such a result "[i]n the absence of a statutory authorization to disregard a possibility of reverter specifically provided for in the trust instrument." *Id.* at 496, 105 Cal.Rptr. at 577. In reaching the result of taxation, the *Moore* Court was also guided, as we are in the case at bar, by case law construing an analogous federal statute prior to its amendment by Congress. The Court in *Moore* stated at 494, 105 Cal. Rptr. at 576–77:

> "The answer would be clear if we dealt with federal law, under which at the present time the existence of a reversionary interest in favor of the settlor of a trust will not make the transfer in trust taxable lacking other independent taxable features, unless the value of the reversionary interest immediately before the decedent's death determined by usual methods of valuation should exceed 5% of the value of the property transferred (26 U.S.C.A. § 2037).

Such a statutory enactment had been necessary, however, to escape the effect of the decision in *Fidelity-Philadelphia Trust Co. v. Rothensies*, 324 U.S. 108, 111–12, 65 S.Ct. 508, 510, 89 L.Ed. 782, where the court said:

'*No more should the measure of the tax depend upon conjectures as to the propinquity or certainty of the decedent's reversionary interest. It is enough if he retains some contingent interest in the property until his death or thereafter delaying until then the ripening of full dominion over the property by the beneficiaries.* The value of the property subject to the contingency, rather than the actu-

arial or theoretical value of the possibility of the occurrence of the contingency, is the measure of the tax.'

California, in its interpretation of the meaning of a transfer intended to take effect in possession or enjoyment at or after the death of the transferor, had followed and was following the federal courts in their interpretation of that clause up to the time of the decision in *Fidelity-Philadelphia Trust Co. v. Rothensies, supra*, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782.

*However, California has provided no legislation to overcome the effect of that decision. In the absence of such legislation we are bound to follow the prior rule that preserved right of reversion places a transfer within the taxable clause."* (Emphasis added.)

Similarly, we believe the language of our own statute enacted only five years after the federal provision construed in *Fidelity-Philadelphia Trust Co. v. Rothensies, supra*,[5] purporting to tax trusts where in the trustor retained *any* interest, must be read to include even a remote possibility of reverter absent any amendment by our Legislature. In construing our taxation statute our Courts have not only remarked that it is "quite similar" to the federal system of taxation, *State v. Estate of Powell*, (1975) 165 Ind.App. 482, 333 N.E.2d 92, but have also had occasion to observe the rule of statutory analysis, discussed in *In re Estate of Cassner*, (1975) 163 Ind.App. 588, 325 N.E.2d 487, 492 to the effect that "this Court must not ignore the rule that there is a strong presumption that the Legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject." In *Cassner*, where the Court was required to determine whether the word "proceeds" (used in a provision of IC 6–4–1–1 exempting certain life insurance proceeds from inheritance tax) included accumulated life policy dividends payable to a beneficiary, it was presumed our Legisla-

---

**5.** The federal provision was § 302(c) of the Revenue Act of 1926. Our statute was enacted in Acts 1931, ch. 75, § 1, p. 192.

ture was aware of analogous federal precedent. After stating the question before it and reiterating the general rule of statutory presumption, the Court stated:

> "While there were no Indiana laws on this subject, there were federal laws. Federal Taxation Statutes—specifically, Internal Revenue Code §§ 101 and 2042 and the forerunners of these sections—exempt from. the beneficiary's income those proceeds from insurance policies (received in a lump sum) and include in decedent's gross estate the amount receivable by the executor [and by all other beneficiaries] as insurance under policies on the life of the decedent.

> .  .  .  .  .

> Thus, for taxation purposes, the Federal Government has traditionally treated proceeds as including the total amount payable by the insurance company as one sum.

> See 34 Am.Jur.2d, Federal Taxation ¶¶ 5170, et seq., and 8630, et seq.

> By engaging in the presumption we can presume that the Legislature was aware of the precedent extant in the Federal Taxation Statutes and followed suit."

*Id.* at 597, 325 N.E.2d at 492–93.

Returning to the instant case, it is apparent from the decision in *Fidelity-Philadelphia Trust Co. v. Rothensies, supra,* that under the federal code in existence at the time our statute was enacted, even a remote possibility of reverter would subject a trust to taxation in the decedent's estate.[6] *See also, e.g., Commissioner v. Bayne,* (2nd Cir. 1946) 155 F.2d 475, 167 A.L.R. 436 (holding the existence of a reversionary interest by implication of law in the creator of a trust to pay the net income to himself for life and on his death to pay the corpus in equal shares per stirpes to his then surviving children and the issue of any deceased, or, in default of children or issue, in equal shares per stirpes to his surviving brothers and sister and the issue of any

deceased, was a sufficient basis for inclusion for federal estate tax purposes of the corpus of the trust in the estate of the grantor.) Viewing the unamended language of our own statute imposing a tax where "any" interest is retained, we see no reason to reach a different result in the case at bar.

Having concluded at least some part of Scott's trust should have been taxed in his estate, we also believe, like the courts in *In re Estate of Moore, supra,* and *Fidelity-Philadelphia Trust Co. v. Rothensies, supra,* that all of the property subject to the retained interest was subject to taxation. As noted above, our statute provided:

> "A transfer of property by deed of trust, heretofore, or hereafter made, wherein the trustor reserved to himself any income or interest, . . . shall, upon the death of the trustor, be taxable to the extent of the value of the property *subject to* such powers and [in] respect to which such powers remain unexercised." (Emphasis added.)

IC 6–4–1–1. Our courts have previously held that where a decedent retains the income of a conveyance (a life estate in realty), the entire conveyance is included in his estate for inheritance tax purposes. *Indiana Department of State Revenue v. Mertz,* (1949), 119 Ind.App. 601, 88 N.E.2d 917. Under the provision of IC 6–4–1–1 quoted above, it is apparent the same result obtains where a trustor has retained a reversionary interest, since the date-of-death value of the entire trust corpus (and any undistributed income) is "subject to" his possibility of reversion.

Numerous other courts, both state and federal, have reached a similar conclusion. *See Annot.,* "Entire Corpus or Only Value of Reserved Interest as Taxable, Under Provision of Estate or Inheritance Tax Law Relating to Transfers Intended to Take Effect at Death," 159 A.L.R. 233, 248–49 (1945) where it is concluded the courts have

---

**6.** As was noted in *In re Estate of Moore, supra,* the federal statute was amended to impose a tax only where the value of the reversionary interest immediately before the decedent's death exceeded 5% of the value of the transferred property and where certain other conditions were met. *See* I.R.C. § 2037; Treas.Reg. § 20.2037–1(a).

"uniformly denied" a claim that any tax should be imposed upon no more than the value of the grantor's possibility of reverter, computed on an actuarial basis. Thus, in *Commissioner of Internal Revenue v. Field*, (1945) 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230, for example, where a 37-year-old settlor established a trust for the lives of his two nieces (then ages three and ten), with the provision the property would revert to him in the event they predeceased him, it was held that when he died at age 52, the entire trust assets were includible in his estate under federal law because "until decedent's death it was uncertain whether any of the corpus would pass to the beneficiaries or whether it would revert to the decedent." *Id.* 324 U.S. at 116, 65 S.Ct. at 512, 159 A.L.R. at 232. The Court noted the "string" retained by the decedent made the entire transfer subject to taxation, and concluded:

> "The estate tax is not based on the value of the reversionary interest of the decedent at the time of his death but on the value at the time of his death of the property to which that reversionary interest relates. It makes no difference how vested may be the remainder interests in the corpus or how remote or uncertain may be the decedent's reversionary interest. If the corpus does not shed the possibility of reversion until at or after the decedent's death, the value of the entire corpus on the date of death is taxable."

*Id.* We similarly conclude the trial court erred in the case at bar in including only the value of Scott's possibility of reverter in his estate, and, accordingly, reverse and remand for further proceedings consistent with this opinion.

CONOVER and YOUNG, JJ. concur.